UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATCHA, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>LANDMARK TECHNOLOGY LLC,<br><br>    Defendant. | Case No. 16-cv-04831-WHO<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 33 |

## INTRODUCTION

Plaintiff Tatcha, LLC, brings this action for declaratory judgment of invalidity and non-infringement of U.S. Patent No. 6,289,319 ("the '319 Patent"). In turn, defendant Landmark Technology, LLC, asserts counterclaims against Tatcha for direct infringement and inducing infringement of the '319 Patent. Tatcha now moves for judgment on the pleadings, arguing that the '319 Patent is invalid because its claims are directed to patent-ineligible subject matter under 35 U.S.C. § 101. Without the benefit of claim construction and a fuller factual record I cannot say, as a matter of law, that the '319 Patent is directed to a patent-ineligible abstract idea. Therefore, Tatcha's motion for judgment on the pleadings is DENIED.

## BACKGROUND

### I.    FACTUAL BACKGROUND

#### A.    The '319 Patent

The '319 Patent, entitled "Automatic Business and Financial Transaction Processing System," was filed on November 30, 1994 and issued on September 11, 2001 to inventor Lawrence B. Lockwood. Counterclaims (Dkt. No. 17) ¶ 7. The '319 Patent belongs to a line of several continuation and continuation-in-part applications that originated from a patent application filed in 1984 and issued in 1986. '319 Patent (Dkt. No. 17-1), col. 1, ll. 5-13.

The '319 Patent "relates to automatic self-operated terminals, vending machines, and interactive processing networks," or more specifically, "to terminals used by banking institutions to make their services available at all hours of the day from various remote locations." *Id.*, col. 1, ll. 17-22.  It is "a system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating[.]" '319 Patent, Abstract.  The system is composed of "a series of self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters." *Id.*  The terminals utilize video screens and video memory to recreate the appearance of a loan officer who assists in acquiring the loan request data through an "interactive sequence of inquiries and answers." *Id.*  The programming of the terminal acquires credit rating data from applicants through credit rating services and determines the credit worthiness of each applicant in order to calculate the amount of money to lend.  *Id.*  The information is then passed on to the financial institution.  *Id.*

According to the patent, loan processing in the past was a "labor intensive business" only done via telephone, mail, or personal interaction. *Id.* col. 1, ll. 20-25.  Due to the "complexity of the process," automatic terminals were not used for this type of service. *Id.* col. 1, ll. 30-35.  The '319 Patent provides that "[a]utomatic vending machines and self-service terminals have evolved to a high degree of sophistication as disclosed in," U.S. Patent No. 4,359,631 Lockwood, et al. ("the '631 Patent"), but "have not been put to use in the more complex types of goods and services distribution which requires a great deal of interaction between individuals and institutions." *Id.* col. 1, ll. 34-37.  The objectives of the '319 Patent are to:  (i) "provide an economic means for screening loan applications;" (ii) "standardize the reporting and interpretation of credit ratings and their application to loan application processing;" (iii) "reduce the amount of paperwork and processing time required by each loan application;" and (iv) "offer a more personal way to apply for credit." *Id.* col. 1, ll. 45-65.

The '319 Patent originally contained six claims and has since undergone two Ex Parte Reexaminations.  Countercl. ¶¶ 8-9.  During the first reexamination, 22 dependent claims were added.  First Amended Complaint ("FAC") (Dkt. No. 15) ¶ 17.  Certificates for the Ex Parte

1   Reexaminations were issued on July 17, 2007, and January 9, 2013.  *See* Countercl., Ex. A.

2   Claims 2 through 28 are dependent on Claim 1 of the '319 Patent.  FAC ¶ 17.  Independent claim

3   1 describes:

> An automatic data processing system for processing business and financial transactions between entities from remote sites which comprises:
> a central processor programmed and connected to process a variety of inquiries and orders transmitted from said remote sites;
> said central processor including:
> means for receiving information about said transactions from remote sites;
> means for retrievably storing said information;
> at least one terminal at each of said remote sites including a data processor and operational sequencing lists of program instructions;
> means for remotely linking said terminal to said central processor and for transmitting data back and forth between said central processor and said terminal;
> said terminal further comprising means for dispensing information and services for at least one of said entities including:
> a video screen;
> means for holding operational data including programing, informing, and inquiring sequences of data;
> means for manually entering information;
> means for storing information, inquiries and orders for said transactions entered by one of said entities via said means for manually entering information and data received through and from said central processor;
> on-line means for transmitting said information, inquiries, and orders to said central processor;
> on-line means for receiving data comprising operator-selected information and orders from said central processor via linking means;
> means for outputting said informing and inquiring sequences on said video screen in accordance with preset routines and in response to data entered through said means for entering information;
> means for controlling said means for storing, means for outputting, and means for transmitting, including means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor;
> said informing sequences including directions for operating said terminal, and for presenting interrelated segments of said operational data describing a plurality of transaction operations;

>said programming sequences including means for interactively controlling the operation of said video screen, data receiving and transmitting means; and for selectively retrieving said data from said means for storing;
>said means for storing comprising means for retaining said operational sequencing list and means responsive to the status of the various means for controlling their operation
>said central processor further including:
>    means responsive to data received from one of said terminals for immediately transmitting selected stored information to said terminal; and
>    means responsive to an order received from a terminal for updating data in said means for storing;
>    whereby said system can be used by said entities, each using one of said terminals to exchange information, and to respond to inquiries and orders instantaneously and over a period of time.

'319 Patent, col. 6, ll. 7-67, col. 7, ll. 1-6. Dependent claim 3 provides, "The system of claim 1, wherein said inquiring and informing sequences of data comprise textual and graphical data." *Id.* col. 8, ll. 1-3.

Although applied to the loan application process, the '319 Patent provides that "the system as described could be applied to other forms of transactions in which information has to be acquired from a customer then processed to a decision or into the performance of a particular task," such as the preparation and filing of income tax returns, the selection and purchase of stocks and other securities, the selection of "self-directed investments" like Individual Retirement Accounts, and "other complex transactions which normally require a great deal of time and attention on the part of the officers of an institution." *Id.*, col. 5, ll. 53-67; *see also* claims 14 and 15 (the system of claim 1 applied to filing of income tax returns and purchasing stock and securities).

Landmark asserts that the '319 Patent improved on the terminal of the prior art (the '631 Patent) and contains an unconventional arrangement of the Direct Memory Access ("DMA") unit positioned independently along a second information handling connection. Opposition (Dkt. No. 40) at 13, 16. Figure 2 of the '319 Patent shows the major components of the terminal. Landmark argues that this differs from the prior art, "which was equipped with a single information handling connection shared among its systems." Oppo. at 1.

**B.     The Parties**

Landmark is a Delaware limited liability company with its principal place of business in San Diego, California. Countercl. ¶ 5. In 2008, Lockwood licensed all rights in the patent to Landmark, making it "the exclusive licensee of the entire right, title and interest in and to the '319 Patent, including all rights to enforce the '319 Patent and to recover for infringement." *Id.* ¶ 10.

Tatcha, a Delaware limited liability company headquartered in San Francisco, California, is a luxury skincare company that sells its products online. FAC ¶¶ 1, 20-21. On May 13, 2016, Landmark sent a letter to Tatcha's CEO, Victoria Tsai, claiming that Tatcha's data processing systems "practice" the '319 Patent by implementing specific functions through Tatcha's servers. FAC ¶ 29; Ex. A. The letter also offered a "non-litigation and nonexclusive license to Landmark's patent portfolio" in return for $38,000, but stated that the offer would be withdrawn upon litigation. FAC ¶ 30, Ex. A. On July 21, 2016, Landmark sent a second letter with similar accusations and an offer to grant access to its patent portfolio for $55,000. FAC ¶ 31, Ex. B.

Landmark alleges that Tatcha infringes the '319 Patent "by providing its products/services using electronic transaction systems, which individually or in combination, use subject matter claimed by the '319 Patent." Countercl. ¶ 12. In particular, Landmark alleges that Tatcha infringes at least Claims 1 and 3 of the patent-in-suit through "the sales and distribution via electronic transactions conducted on and using . . . its website located at www.tatcha.com and www.tatcha.com/shop/checkout/cart." *Id.* ¶¶ 14, 17, 23.

**II.     PROCEDURAL BACKGROUND**

Tatcha originally filed this action for declaratory judgment of invalidity and non-infringement of two patents: the '319 Patent and U.S. Patent No. 7,010,508 ("the '508 Patent"). Complaint (Dkt. No. 1). Landmark filed a motion to dismiss, or in the alternative, to transfer venue to the Southern District of California. Dkt. No. 14. Tatcha then filed its First Amended Complaint, dropping its claims related to the '508 Patent. Dkt. No. 15. Pursuant to the parties' stipulation, I denied as moot the motion to dismiss, or in the alternative, to transfer venue. Dkt. No. 37.

1    Landmark filed its answer to the amended complaint and asserted two counterclaims
2    against Tatcha: (1) direct infringement of the '319 Patent in violation of 35 U.S.C. § 271(a); and
3    (2) inducing infringement of the '319 Patent in violation of 35 U.S.C. § 271(b). Dkt. No. 17.
4    Tatcha subsequently filed an answer to the counterclaims. Dkt. No. 29. Tatcha now moves for
5    judgment on the pleadings, asserting that the '319 Patent's claims are invalid because they are
6    directed to patent-ineligible subject matter. Motion for Judgment on the Pleadings ("Mot.") (Dkt.
7    No. 33). As Tatcha notes, such relief would dispose of the entire case: Tatcha's declaratory relief
8    claims and Landmark's counterclaims for patent infringement.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted).

A motion for judgment on the pleadings under Rule 12(c) utilizes the same standard as motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure (b)(6). *Id.* A party must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) or Rule 12(c) motion. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of

6

judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**DISCUSSION**

Under Section 101 of the Patent Act, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore . . . ." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The reason for the exception is clear enough—"such discoveries are manifestations of . . . nature, free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) (citations and internal quotation marks omitted). The boundaries of the exception, however, are not so clear.

The *Alice* court highlighted "the concern that drives this exclusionary principle as one of preemption." *Alice*, 134 S. Ct. at 2354 (noting the delicate balance inherent in promoting progress, the primary object of patent law, and granting a monopoly, the means for accomplishing that goal). In other words, patents that seek to wholly preempt others from using a law of nature or an abstract idea—"the basic tools of scientific and technological work"—are invalid. *Id.* "Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Id.* (internal citations and quotation marks omitted).

Courts apply a two-step framework for analyzing whether claims are patent eligible. First, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 2355. "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (internal quotation marks omitted). Although there is no bright line rule for determining whether a claim is directed to an abstract idea, courts have articulated some guiding principles. When evaluating

7

computer-related claims, courts look to whether the claims "improve the functioning of the computer itself," *Alice*, 134 S.Ct. at 2359, or whether "computers are invoked merely as a tool" to implement an abstract process. *Enfish*, 822 F.3d at 1336. Another consideration is "whether claims are directed to a problem that does not arise in the 'brick and mortar context' but rather is particular to the Internet as an indicator that a claim is not drawn to a patent-ineligible abstract idea." *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1082 (N.D. Cal. 2016) (internal quotation marks omitted; citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 1257-58 (Fed. Cir. 2014)).

Second, if the claims are directed to a patent-ineligible concept, the court must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Enfish*, 822 F.3d. at 1334 (internal citations and quotations omitted). This step entails the "search for an inventive concept – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (internal quotation marks and citations omitted). "For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014). "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 1348. However, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

Tatcha argues that the '319 Patent is invalid because it is directed to the abstract idea of "improved decision making capabilities." Mot. at 12. Although Claim 1 uses a series of means-plus-function limitations, Tatcha contends that the "means" are simply "conventional computers." *Id.* at 5. In Tatcha's view, "Claim 1 uses generic computer hardware and software as tools to receive, transmit, store, and then process data, information, orders, and inquiries to generate a

response." *Id.* at 6. Tatcha also argues that "the technology disclosed in the '319 Patent was well known even in 1984, found in a variety of dictionaries, and in some instances, is now obsolete—e.g., modem connection to a phone line or the use of a video disk." Reply (Dkt. No. 41) at 3. Therefore, Tatcha contends, the '319 Patent lacks an inventive concept.

Landmark, on the other hand, argues that the '319 Patent is not directed to an abstract idea, but rather a "specific improvement to the way computers operate." Oppo. at 14. But even if the patent is directed to an abstract idea, Landmark contends, it contains an inventive concept "in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. In particular, Landmark asserts that the "'319 Patent claims a specific hardware improvement to the terminal: an unconventional arrangement of components such that its DMA unit is positioned independently along a second information handling connection, so data can be stored immediately into memory without having to traverse the first information handling connection which is fully engaged with video playback." Oppo. at 14. In Landmark's view, this purportedly unconventional arrangement is required by the claims, especially the "means for controlling" and "means for interactively controlling" limitations. Oppo. at 15-17.

In reply, Tatcha asserts that this arrangement is not unconventional because it "was previously patented long before Landmark filed for its patent in 1984." Reply at 4 n.5 (citing U.S. Patent Nos. 4,137,565 and 4,455,620). It also argues that Claim 1 does not rely on the architecture of the DMA unit, even if unique or unconventional, and, therefore, such architecture is not claimed. *Id.*

"Where the court has a 'full understanding of the basic character of the claimed subject matter,' the question of patent eligibility may properly be resolved on the pleadings." *Papst Licensing*, 193 F. Supp. 3d at 1078. Although "claim construction is not an inviolable prerequisite to a validity determination under § 101," the Federal Circuit has warned "that it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis[.]" *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). In determining whether claim construction is necessary, courts look to a variety of factors, including: (1) "whether there are genuine disputes of fact and if so, whether they

are numerous or may be resolved through simply assuming the construction most favorable to the [patent holder]"; (2) "the extent to which extrinsic facts may be helpful or relevant in construing the claims, and the substance of the parties' arguments"; and (3) "[w]hether the parties' arguments rely largely on facts already in the record." *Boar's Head Corp. v. DirectApps, Inc.*, No. 2:14-cv-01927-KJM, 2015 WL 4530596, at *7 (E.D. Cal. July 28, 2015) (collecting cases).

Here, I find that the determination of whether the '319 Patent is valid under Section 101 would benefit from claim construction and a fuller factual record. *See Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-cv-02177-SI, 2016 WL 283478, at *3 (N.D. Cal. Jan. 25, 2016) (denying motion for judgment on pleadings without prejudice); *Palomar Techs., Inc. v. Mrsi Sys., LLC*, No. 15-cv-1484 JLS (KSC), 2016 WL 4496838, at *4 (S.D. Cal. Mar. 11, 2016) (denying motion to dismiss without prejudice). In particular, a more developed record and claim construction will be helpful in resolving the parties' dispute over whether the arrangement of the DMA unit is unique and unconventional, whether the claimed invention relies on this arrangement, and whether the purportedly unique arrangement is claimed, among other issues.

Also, both parties cite to matters outside of the pleadings to support parts of their arguments, including similar or related patents, patent prosecution histories, the declaration of Marcel De Armas, and the declaration of Landmark's expert Joey Maitra. Although some of these materials may be judicially noticeable, neither party requested that I take judicial notice of any document. In light of the limited record at this stage, I decline to convert Tatcha's Rule 12(c) motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). For all of these reasons, I cannot find, as a matter of law, that the '319 Patent is directed to a patent-ineligible abstract idea and invalid at this time.

**CONCLUSION**

The motion for judgment on the pleadings is DENIED without prejudice. Tatcha may raise this issue again following claim construction and the development of a fuller factual record.

**IT IS SO ORDERED.**

Dated: March 9, 2017

William H. Orrick
United States District Judge

11